UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JENNIE CALVACHE, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED,  )<br>)<br>PLAINTIFF,  )<br>)<br>V.  )<br>)<br>VISION OF HOPE MINISTRIES, INC. AND FAITH CHURCH OF LAFAYETTE, INC.,  )<br>)<br>DEFENDANTS.  ) | CASE NO.: 4:24-CV-53 |

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of those similarly situated, brings this action against Vision of Hope Ministries, Inc. and Faith Church of Lafayette, Inc. for violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. In support of her claim, Plaintiff shows as follows:

**INTRODUCTION**

Vision of Hope presents itself as a residential treatment center for women. In connection with this residential treatment center, Vision of Hope also runs Reclaimed Hope, a store with both a brick and mortar and online presence, which offers goods for sale in interstate commerce. Vision of Hope is closely tied to Faith Church of Lafayette. They share common internet presences, both being represented online at faithlafayette.org. The executive director of Vision of Hope is an employee of Faith Church. Most importantly, Calvache and other "interns" at Vision of Hope were required to furnish labor to the church for church services.

Vision of Hope and its retail store Reclaimed Hope operate an "internship" program in which Calvache was a participant. In exchange for quite a lot of labor, interns are supposed to receive free meals and opportunities to work on counseling supervision hours for ACBC certification, among other things. The reality is that Vision of Hope's internship was not primarily

for the benefit of the interns, including Calvache. Instead, the primary beneficiary of the internship was Vision of Hope and Faith Church. Vision of Hope and Faith Church lured these young women with illusory promises of education, training, and opportunity to progress in counseling certification, but in the end simply used them for labor.

## PARTIES

1. Plaintiff is an individual who resides in Tippecanoe County, Indiana.
2. For the times relevant to her claims, Plaintiff was an employee of Defendants within the meaning of the FLSA.
3. Vision of Hope Ministries, Inc. is an Indiana non-profit corporation with its principal place of business in Tippecanoe County, Indiana.
4. At the times relevant to Calvache's claims, Vision of Hope was Calvache's employer within the meaning of the FLSA.
5. Faith Church of Lafayette, Inc. is an Indiana non-profit corporation with its principal place of business in Tippecanoe County, Indiana.
6. At the times relevant to Calvache's claims, Faith Church was Calvache's employer within the meaning of the FLSA.

## JURISDICTION AND VENUE

7. This Court properly has jurisdiction over Calvache's claim pursuant to 28 U.S.C. § 1331 inasmuch as Calvache is asserting a claim arising under federal law.
8. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391 inasmuch as Defendants may be found within this judicial district, and a substantial portion of the events giving rise to Calvache's claims occurred within this judicial district.

## FLSA Coverage

9. Plaintiff, and those similarly situated, are employees within the meaning of the FLSA inasmuch as they were individuals employed by employers.

10. Vision of Hope was the employer of Plaintiff and those similarly situated, as defined in 29 U.S.C. § 203(d).

11. Faith Church was an employer of Plaintiff and those similarly situated, as defined in 29 U.S.C. § 203(d) inasmuch as it acted in the interest of an employer.

12. Plaintiff, and those similarly situated, are individuals covered by the FLSA inasmuch as they were engaged in commerce or the production of goods for commerce, handling interstate transactions, and using the instrumentalities of interstate commerce.

## Factual Allegations

13. Calvache began working for Defendants as an "intern" in approximately July 2021.

14. Calvache's first term as an "intern" concluded in approximately January 2022.

15. Calvache began another term as an "intern" in January 2023.

16. Calvache's second term as an "intern" ended in February 2023.

17. Calvache, and those similarly situated, were generally not paid for her work as an "intern."

18. As part of the internship, Calvache and those similarly situated were providing the core labor required by Defendants.

19. Calvache and those similarly situated did not receive training that would be similar to that given in an educational environment.

20. Calvache and those similarly situated had little opportunity to observe or participate in counseling.

21. Calvache and those similarly situated had little or no opportunity to work on ACBC certification progress.

22. Calvache and those similarly situated were essentially used as free labor.

23. The "internships" worked by Calvache and those similarly situated were not integrated with coursework or receipt of academic credit.

24. The "internships" worked by Calvache and those similarly situated are not intended to accommodate academic commitments.

25. Instead, the "internships" are expected to be "interns" primary engagements.

26. Defendants specifically relegated college or seminary work by Calvache and those similarly situated to the "intern's" "free time."

27. The "internship" was not limited to the period in which Calvache and those similarly situated would receive beneficial learning.

28. The primary responsibilities of "interns" had nothing to do with beneficial learning.

29. Instead, the primary responsibilities of "interns" were focused on supervising residents, working security, working in the Reclaimed Home shop, and staffing Faith Church on Sunday.

30. The work furnished by "interns" directly replaced the work of paid employees.

31. Vision of Hope maintains some paid staff.

32. The duties of "interns" and the paid staff involve extensive overlap.

33. Vision of Hope paid staff would be paid for performing the same tasks and functions that "interns" were expected to do without pay.

34. While completion of an "internship" does not automatically entitle an "intern" to a paid position, there is a clear path and track record of "interns" progressing into paid positions.

35. Though Defendants promised "interns" that they would receive weekly training from staff, that training time only accounted for approximately 2% of their working time.

36. Often, that 2% of their weekly labor which was accounted for by training proved illusory and was canceled.

37. Though Defendants suggest ACBC certification progress as a benefit furnished to interns, Defendants only say that they will "try to help" "on a case-by-case basis" and "will be determined in the interview process as well as during the internship."

38. Calvache and those similarly situated were required to work schedules of between 53 and 62 hours per week.

39. Calvache and those similarly situated were required to work at least one shift per week in the Reclaimed Hope shop.

40. Calvache and those similarly situated received no educational or training benefit from their work in the Reclaimed Hope shop.

41. Instead, Calvache and those similarly situated were expected to generate revenue for Defendants while working the shop, including processing credit card transactions, engaging in telephone communications including interstate communications, and processing interstate transactions for Reclaimed Hope's e-commerce operation.

42. Calvache and those similarly situated were expected to work shifts serving as security personnel.

43. Calvache and those similarly situated received no educational or training benefit from their work as security personnel.

### COLLECTIVE ACTION FACTUAL ALLEGATIONS

44. Defendants maintained a policy, pattern, practice, or plan by which Calvache and those similarly situated were not paid at least the minimum wage.

45. Defendants maintained a policy, pattern, practice, or plan by which Calvache and those similarly situated were not paid at least one-and-one-half times their regular hourly rates for hours in excess of 40 in single workweeks.

46. Upon Plaintiff's information and belief, this policy, pattern, practice, or plan was not unique to Plaintiff, but affected other "interns" employed by Defendants.

47. Upon Plaintiff's information and belief, Calvache and those similarly situated were subjected to the same policies, patterns, practices, or plans by which they were not paid at least the minimum wage, nor paid overtime wages for hours in excess of 40 in single workweeks.

**COUNT I: VIOLATION OF THE MINIMUM WAGE AND OVERTIME PROVISIONS OF THE FLSA**

48. Calvache and those similarly situated worked for Defendants.

49. Calvache and those similarly situated customarily and regularly worked at least 40 hours in single workweeks.

50. Calvache and those similarly situated were not paid at least the minimum wage as prescribed by the FLSA.

51. Calvache and those similarly situated were not paid at least one-and-one-half times the minimum wage for hours in excess of 40 in single workweeks.

52. Defendants violated the FLSA by failing to pay Calvache and those similarly situated at least the minimum wage.

53. Defendants violated the FLSA by failing to pay Calvache and those similarly situated at least one-and-one-half times the minimum wage for hours worked in excess of 40 in single workweeks.

54. Defendants harmed Calvache and those similarly situated by their wrongful, unlawful conduct.

55. Defendants have acted willfully in violating the rights of Calvache and those similarly situated under the FLSA.

56. Defendants' actions were not taken in good faith.

## PRAYER FOR RELIEF

WHEREfore Plaintiff, for herself and those similarly situated, demands the following relief:

A. Unpaid minimum wage;

B. Unpaid overtime wages;

C. Liquidated damages;

D. An order enjoining Defendants from further violations of the FLSA;

E. An order awarding Plaintiff's attorney's fees;

F. An order awarding the costs of this action;

G. Such other relief as this Court determines to be necessary and proper.

/s/ Jason R. Ramsland
Jason R. Ramsland #29443-29
Ramsland Law LLC
880 Monon Green Blvd
Suite 101.32
Carmel, IN 46032
765.267.1240
jason@rams.land
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

/s/ Jason R. Ramsland
Jason R. Ramsland #29443-29