UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JENNIE CALVACHE, individually and on behalf of similarly situated persons, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| | ) No. 4:24-cv-53- PPS-JEM ) |
| FAITH CHURCH OF LAFAYETTE, INC., et al., | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a collective action under the Fair Labor Standards Act (FLSA) brought by Jennie Calvache, an intern for Vision of Hope Ministries. Presently before me is the Plaintiff's Motion for Conditional Certification, requesting step-one notice pursuant to the FLSA and approval of the proposed notice of opportunity to join the lawsuit and consent form. [DE 15.] Defendants, Vision of Hope Ministries and Faith Church of Lafayette, have opposed the conditional certification of the FLSA collective action. [DE 19.] For the reasons enumerated below, I will grant the motion and conditionally certify this case under the FLSA.

**Background**

This action is brought on behalf of current and former Vision of Hope interns who, in the three years preceding this motion, furnished services to Defendants but were not paid minimum wage and overtime as allegedly required by the FLSA. Defendants Vision of Hope Ministries and Faith Church of Lafayette are Indiana non-

profit corporations with their principal place of business in Tippecanoe County, Indiana. [DE 1 at 2.]

The named plaintiff, Ms. Calvache, alleges that she and other similarly situated interns performed core labor for Vision of Hope and Faith Church without receiving any significant training, being illegally denied lawfully due payment. Calvache started working for Defendants as in intern in July 2021, she worked for them until January 2022, and then began another term as an intern in January 2023 which went until February 2023. [DE 1 at 3.]

Plaintiff claims for an internship to be lawfully unpaid, the internship must pass the "primary beneficiary" test, which focuses on what the intern receives in exchange for her work and realizes that the inter-employee relationship differs significantly from a standard employee-employer relationship. *See Hollins v. Regency Corp.*, 867 F.3d 830, 836 (7th Cir. 2017). In *Hollins*, the Seventh Circuit also recognized factors set out by the Department of Labor to enable a court to distinguish between an employee and an unpaid trainee. *Id.* at 835. The *Hollins* court cites *Glatt v. Fox Searchlight, Inc.*, 811 F.3d 528, 536-37 (2d Cir. 2015), which provided "[i]n the context of unpaid internships, we think a non-exhaustive set of considerations should include": (1) whether there is a clear understanding that the internship is unpaid; (2) whether the internship provides training similar to an educational environment; (3) whether the internship is tied to the intern's formal education program; (4) whether the internship accommodates the intern's academic commitments; (5) whether the internship is of limited duration and

2

provides beneficial learning; (6) whether the intern's work complements, rather than displaces, the work of paid employees while providing significant education benefits; and (7) whether there is no entitlement to a paid job at the conclusion of the internship. *Id.*

While it is uncontroverted that the interns in this case entered the agreement knowing it would be an unpaid position, Plaintiff claims the internship still fails the primary beneficiary test. According to Plaintiff, the interns received very little training, the program did not accommodate the intern's academic commitments but rather required them to either not be involved in formal education or to seek special permission, the interns' work displaced the work of other employees, and while there was no express promise of a paid job at the end of the internship, there was a pipeline from internship to paid staff positions. [DE 15 at 2-4.] She claims the program relied on the labor of unpaid interns and would look very different without the interns' work. [*Id.* at 3.] Calvache estimated she worked an average of 53-62 hours per week for Vision of Hope. [DE 1 at 5.] Defendants deny this allegation, and claim they only asked interns to commit to conducting shifts of about 30-32 hours per week. [DE 15 at 5.] Plaintiff also claims that one of the only tangible benefits furnished to interns is the "biblical counseling observation time" necessary to achieve a certification, but that certification requires only 10 hours of observation. *Id.* Plaintiff argues this is not commensurate with the year-long internship program. *Id.* Finally, she argues that up until March 2025, work of unpaid interns completely displaced the work of paid staff. [*Id.* at 6.]

3

Since that time, Defendants have started paying interns. *Id.* In sum, Plaintiff contends the internship program was really a job, with only minimal education benefits, and without the requisite pay.

## Discussion

Under 29 U.S.C. § 216(b), an employee may bring an action to recover unpaid overtime compensation on "behalf of himself . . . and other employees similarly situated." This is known as a "collective action." *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (quoting 29 U.S.C. § 216(b)). No employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Collective actions under the FLSA are fundamentally different than class actions under Federal Rule of Civil Procedure 23. Plaintiffs in a collective action must "opt-in" to the action to be bound by a judgment while plaintiffs in a Rule 23 class action must "opt-out." *See King v. General Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Because of the "opt-in" requirement, a representative plaintiff in a collective action has to be able to inform other individuals who may have similar claims that they may join her lawsuit. *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

Section 216(b) does not explicitly provide for court-ordered notice. Nonetheless, the Supreme Court has held that, in appropriate cases, district courts have the

4

discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Such court-authorized notice serves the broad, remedial purpose of the FLSA and comports with the court's interest in managing its docket. *Id.* at 172-74.

District courts within the Seventh Circuit have commonly applied a two-step approach to determine whether an FLSA claim should proceed as a collective action. *See, e.g., Cramer v. Bank of Am., N.A.*, No. 12 C 8681, 2013 WL 6507866, at *1 (N.D. Ill. Dec. 12, 2013); *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1081 (N.D. Ind. July 27, 2009); *Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-CV-0049 DFH-TAB, 2005 WL 775931, at *2 (S.D. Ind. Mar. 15, 2005). First, the plaintiffs have to demonstrate, based upon "pleadings, affidavits, and declarations" that they are "similarly situated" to "employees they seek to notify." *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2015 WL 365785, at *2 (W.D.N.Y. Jan. 27, 2015). If Plaintiffs make this relatively modest showing, then notice and an opportunity to "opt-in" can be sent to those employees who are similarly situated to the named plaintiff. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). The lenient standard applicable to the first stage "typically results in conditional certification" of a collective action. *Ruffolo v. LaSalle Group, Inc.*, No. 18 C 3305, 2019 WL 978659, at *2 (N.D. Ill. Feb. 28, 2019) (quotation omitted). The action then proceeds through discovery as a representative or collective action.

The second stage occurs only after the opt-in process is complete and the parties

5

have taken discovery. *Cramer*, 2013 WL 6507866, at *2. The defendant may then ask the Court to "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (quotation omitted). At this second step, courts apply a more stringent test and consider whether any affirmative defenses have to be applied to individual plaintiffs, as well as fairness or procedural concerns. *Id.*

In this case, Defendants don't challenge, for the purpose of this motion, that Plaintiff is similarly situated to the class members. [DE 19 at 2-3.] Instead, they argue "Plaintiff cannot demonstrate even a modest showing that Plaintiff and the other individuals that participated in the internship program were 'victims' of a policy that violated the law." [DE 19 at 3.] As the court in *Powers v. Centennial Comm. Corp.*, 679 F.Supp.2d 918, 921 (N.D. Ind. 2009) recognized, "a majority of federal courts have held that, for a case to proceed as a collective action the Plaintiffs must make a modest factual showing at the outset of the case that they and the other employees were victims of a common policy or plan that violated the law." "If Plaintiffs made this modest factual showing, then notice and an opportunity to 'opt-in' can be sent to those employees who are similarly situated to the named Plaintiffs." *Id.* Although "lenient, the 'modest factual showing' standard is not a mere formality." *Id.*

Defendants claim Plaintiff is misguided using the "primary beneficiary test" to determine if Calvache has made a moderate showing that the Defendants violated the

6

law. In particular, they claim the Department of Labor has more recently publicized an updated fact sheet for internship programs under the FLSA. [DE 19 at 3.] The Department of Labor's fact sheet lists the following seven factors:

1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee - and vice versa.

2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

[Department of Labor Fact Sheet, https://www.dol.gov/agencies/whd/fact-sheets/71-flsa-internships (last accessed May 20, 2025).] Of course, as Plaintiff notes in her reply, these factors are basically *the same* as the ones articulated by Plaintiff and described in *Glatt* – in fact, the Department of Labor actually states in its Fact Sheet that "[c]ourts have used the 'primary beneficiary test' to determine whether an intern or student is, in

7

fact, ac employee under the FLSA . . . Courts have identified the following seven factors as part of the test:" [*Id.*; DE 20 at 1-2.]

Under either the primary beneficiary test articulated by case law or the extremely similar also 7-factor test articulated by the Department of Labor, Plaintiff has easily made a modest showing that her rights were violated. Plaintiff has submitted deposition testimony as well as the Declaration of Calvache [DE 15-2] tending to show that the actual training afforded to interns was only approximately 1-2 hours per week, Calvache received very little training or education, and she was working around 53-62 hours per week, oftentimes at the retail store or providing day care and overnight supervision for the residents of the facility. Although Defendants argue the factors "weigh[] heavily in Defendants' favor," the test at this stage in the case, for conditional certification, does not rely on who has more evidence. [DE 19 at 4.] For all of these reasons, I find it appropriate to grant conditional certification in this case.

Next, Defendants criticize the proposed notice to the other potential class members [DE 15-3] and consent to join [DE 15-4]. First, they take issue with the notice addressed to "[a]ll 'interns'" [DE 15-3 at 1], with the term "interns" enclosed in quotation marks. Defendants argue "the inclusion of quotation marks around the word 'interns' on the opening page and throughout the proposed notice improperly presumes that participants in the internship were mis-classified and may mislead recipients to believe that, as a matter of law, they should be entitled to compensation for participating in the internship." [DE 19 at 5.] According to Plaintiff, Defendants

specifically designated and used the term "intern" for Calvache's position, and the proposed notice specifically states Plaintiff's contentions and acknowledges that Defendants deny the allegations. [DE 20 at 3.]  Upon consideration, I think it is appropriate to put the word "intern" in quotation marks, since this is a term Defendants themselves used to designate a specific classification of people working for them.

Defendants also criticize the bullet points on page one of the proposed notice, claiming "the bullet points are presented as if they are facts, or have already been proved in Court." [DE 19 at 6.]   There is nothing misleading about what the Plaintiff is claiming in this case.  Before the bullet points, the notice specifically clarifies: "She alleges that:" and then after the bullet points, states "Defendants deny the allegations and claim that they did not violate any wage and hour laws." [DE 15-3 at 1.]  The notice also states: "[a]lthough this notice and its consent have been authorized by the Court, the Court has not taken a position regarding the merits of Plaintiff's claims or Defendants' defenses."  *Id.*  This all seems entirely appropriate.

Finally, Defendants have beef with the e-mail address under the title "How do I join the lawsuit" in the notice. [DE 15-3 at 3.]  One of the current options is for the person to submit the consent form online at: "www.sueyourbadboss.com/vohlawsuit." *Id.*  Defendants claim this is inflammatory and implies a determination of guilt and an assumption that Defendants are "bad bosses." [DE 19 at 6.]  As a compromise, Plaintiff's counsel has acquired the domain name "www.VOHLawsuit.com" and has offered to revise the notice to use that domain for the URL. [DE 20 at 4.]  I do think the website

9

name "sueyourbadboss" is unnecessary and potentially inflammatory, and since Plaintiff's counsel has provided an easy solution, Plaintiff is ordered to revise the domain name for the URL on the notice. Defendants also take issue with the link to Plaintiff's counsel's website and the ability for potential class members to complete the notice online. [DE 19 at 6-7.] This argument doesn't makes sense in an age of online information. Obviously potential class members would want to learn about the lawsuit and educate themselves about the law firm potentially representing them. There is no reason the notice shouldn't be available online, with an option to complete it online.

**IT IS HEREBY ORDERED AS FOLLOWS:**

This matter is conditionally certified as a collective action under the FLSA, and the Plaintiff's Motion for Conditional Certification of a Collective Action Pursuant to the Fair Labor Standards Act [DE 15] is GRANTED.

After Plaintiff's counsel changes the domain name to "www.VOHLawsuit.com", Document 15-3 is approved as the authorized Notice of Opportunity to Join Unpaid Wage Lawsuit, and Document 15-4 is approved as the authorized Consent to Join, to be sent to all interns who work or worked for Vision of Hope Ministries, Inc. without pay from July 10, 2021, to the present.

SO ORDERED.

ENTERED: June 5, 2025.

                                            /s/   Philip P. Simon
                                          PHILIP P. SIMON, JUDGE
                                          UNITED STATES DISTRICT COURT